515 So.2d 1217 (1987)
In the Matter of the ESTATE OF Dewey D. Holloway, Deceased.
Mattie K. HOLLOWAY
v.
Betty Jean Holloway HAWKINS and Lee T. Holloway, Individually and as Executor of the Estate of Dewey D. Holloway, Deceased.
No. 57027.
Supreme Court of Mississippi.
November 25, 1987.
*1218 Rhett R. Russell, Soper & Russell, John R. Coleman, Tupelo, for appellants.
David R. Sparks, Sparks, Wicker & Colburn, Tupelo, for appellees.
Before ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and GRIFFIN, J.
DAN M. LEE, Presiding Justice, for the Court:

I.
This appeal arises from a judgment of the chancery court of Lee County, Mississippi, entered in favor of Appellees below *1219 adjudicating that certain assets were not part of the estate of Dewey Holloway, deceased, and thus not subject to his widow's elective share.
Dewey D. Holloway died in October 1982, leaving his wife of 38 years, Mattie K., and four children: Betty Jean Holloway Hawkins, Lee Tom Holloway, Douglas D. Holloway and Guy Holloway. Guy Holloway was the only offspring of Dewey and Mattie's marriage; the other three were the offspring of Dewey Holloway's previous marriage. Apparently, Dewey Holloway kept his business affairs very private; neither his wife nor his children knew much about his financial dealings.
Mattie K. Holloway initially filed a complaint seeking a widow's allowance. She also renounced her share under decedent's will and filed a complaint contesting decedent's will and seeking an accounting, recovery of estate property, and equitable relief.
The issue as narrowed by the chancellor was whether certain instruments, a promissory note and certificates of deposit, were part of the estate and, therefore, subject to the widow's elective share. The instruments listed decedent as payee in the alternative with either one or both of the defendants. The chancellor held the notes and instruments were owned by the alternatively named individuals, appellees here, and none of the money represented by the note and the certificates of deposit was part of the estate and subject to the widow's elective share. Outside of the funds at issue, the estate assets were limited to personal property and the homestead. Thus, there were no assets from which either a widow's allowance could be paid or an elective share could be distributed.
From these adverse rulings Mattie K. Holloway appeals, assigning eight errors:
1. The lower Court erred in adjudicating that the three Certificates of Deposit titled jointly to decedent and three other individuals as of his death passed to and vested in the surviving individuals free and clear of any claim of decedent's Estate and free and clear of the claims of Appellant, decedent's widow, for computation of or funding her statutory share and her widow's allowance.
2. The lower Court erred in determining that the disposition of the three Certificates of Deposit titled to decedent as of the time of his death is governed by Section 81-5-63 MCA.
3. The lower Court erred in adjudicating that the Promissory Note secured by Deed of Trust and jointly titled to decedent and Appellee, Lee T. (Tom) Holloway, as of the time of decedent's death passed to such Appellee free and clear of any claim of decedent's Estate and free and clear of the claims of decedent's widow for computation of or funding her statutory share and her widow's allowance.
4. The lower Court erred in finding "apparent delivery" of the aforestated Promissory Note and Deed of Trust to Lee T. (Tom) Holloway in his individual capacity.
5. The lower Court erred in overruling Appellant's objection to the inventory of the Executor.
6. The lower Court erred in refusing to remove Appellee, Lee T. (Tom) Holloway, as executor and in denying Appellant's demand that a competent and disinterested person or entity be appointed as Executor de bonis non.

7. The lower Court erred in not assessing costs, including a reasonable attorney's fee, against one or more of the Appellees.
8. The lower Court erred in denying Appellant's application for a widow's allowance.
Decedent left a will which was admitted to probate by decree entered November 30, 1982. The will named as executor Lee Holloway, decedent's son. Letters testamentary were duly entered. Decedent devised to Mattie K. Holloway a life estate in the couple's homestead property only so long as she lived on it and used it solely as a residence. The remainder of his property, both real and personal, was to be sold *1220 and the proceeds distributed among Mattie and his children; however, Mattie would get her share only if she continued to live on the homestead property.
Douglas Holloway sought an accounting and inventory of the estate assets. The executor filed an inventory listing the homestead as the estate's only real property. Decedent had no other bank accounts outside a joint checking account with Mattie Holloway. Household items and furnishings were owned jointly by decedent and Mattie.
The only other items listed in the inventory were three certificates of deposit and a promissory note with accompanying deed of trust. The CDs were made payable to decedent Or Betty Holloway Hawkins Or Lee T. Holloway Or Guy Holloway. One CD was for $16,000 and the other two CDs were for $10,000 each.
To avoid confusion, it should be made clear at this juncture that $4,000 in cash was added to the $16,000 CD at renewal in order to create the two $10,000 CD's existing at decedent's death.
The only other significant item in the inventory was a promissory note. Decedent sold some real estate to Joe M. Allen and wife and Charles Lee and wife in March 1976. The four executed a promissory note for $20,200 payable to Dewey D. Holloway (decedent) or Lee T. Holloway, payable $120 per month for five years and $100 per month for the remaining 10 years.
Mattie Holloway subsequently filed her complaint, alleging undue influence by Betty Holloway Hawkins and Lee Holloway. Alternatively, she alleged that decedent was misled or was laboring under a mistake of law or fact in transferring funds into the CDs and executing the purported will. Alternatively, she alleged that before his death decedent was fraudulently induced to make the will and transfer to appellees property which he owned. She alleged that decedent intended for appellees to hold the funds primarily for her benefit.
Mattie sought a constructive trust on all funds obtained through fraud, undue influence or mistake. She also sought an adjudication that she had an equitable one-half interest in funds and other property held jointly by decedent and herself, the title, interest or possession of which were transferred to appellees.
Through Lee Holloway, executor and alternatively named payee on the certificates and the promissory note, the estate took the position that the instruments were not part of the estate but, rather, passed outside the will.
Mattie deposed Betty Holloway Hawkins, Lee Holloway and Lee's wife, Mary Nell. Appellees deposed Mattie and then moved for summary judgment on the grounds that neither the certificates nor the promissory note were part of decedent's estate.
In an effort to expedite litigation, however, this motion for summary judgment quickly escalated to a decision on the merits based on the depositions and stipulations entered into the record. The chancellor had no opportunity to observe any of the witnesses. The chancellor entered judgment that neither the certificates nor the promissory note were part of the estate.
The court in its judgment also denied Appellant's objection to the accounting and her request to have Lee Holloway removed as executor. The chancellor denied Mattie Holloway's request for widow's support because no assets existed from which to pay such support, and held that Mattie Holloway would take an unaffected share of the estate by virtue of her renunciation of the will.
From that judgment Mrs. Holloway appeals.
The dispositive question on appeal is whether the chancellor erred in finding that the certificates of deposit and promissory note passed outside the estate.

II.

The Certificates

A.
Dewey Holloway began providing money to purchase certificates of deposit several years before his death. Testimony on this *1221 point in the depositions is by no means clear, but documentation in the record reveals that at least one certificate of deposit for $10,000 was purchased September 17, 1979, and listed the payees as Betty Holloway Hawkins or Lee T. Holloway or Guy Holloway.
The certificate was renewed at six-month intervals, but the amount was increased in March 1981 to $15,000 and decedent's name was added as an alternative payee; this remained true with subsequent renewals. In September 1981, the certificate was renewed and increased to $16,000.
On March 8, 1982, Dewey Holloway cashed a $4,200 check written on his and Mattie Holloway's joint account. On March 20, 1982, the amount of the certificates was increased to $20,000 by the purchase of two certificates for $10,000 each. Thus, 12 days before the amount of money held in CD's was increased by $4,000 decedent withdrew a similar amount from his and his wife's joint checking account. Betty Holloway Hawkins stated she could not remember from where she received the money to increase the amount from $16,000 to $20,000.
These two certificates were renewed in September 1982, one month prior to Dewey Holloway's death. These certificates matured after Mattie Holloway filed her complaint asserting an interest in the funds. Betty Holloway Hawkins testified that she renewed these in favor of two more certificates, dropping the names of Dewey Holloway (the decedent) and Guy Holloway (decedent's and Mrs. Holloway's son, who apparently helped his mother in this suit). Mattie stated she did not know about the certificates until after her husband's death, and she never knew about any contributions her husband made to purchase the certificates.
It appears, then, that decedent, directly or indirectly, provided a large portion of money to purchase the certificates. Though she could not remember specific amounts, Betty Holloway Hawkins testified in her deposition that money for the certificates came partly from her own money, some of which might have been a gift from decedent, and partly from money provided by decedent.
The certificates were kept in Lee Holloway's safe deposit box to which decedent had ready access. Lee stated in his deposition that he kept them in an envelope which bore Betty's name because she was responsible for renewing them. Lee testified that decedent had no access to the lock box and Lee would not have given the certificates to decedent if he had asked. This statement contradicts evidence that decedent did renew a certificate or certificates on one occasion when Lee's son retrieved it from the lock box. The parties stipulated that decedent received the interest income from the certificates until his death.
There was substantial evidence that decedent intended the $20,000 to be held in trust to care for his widow with the remainder, if any, to be divided among his children. Mary Nell Holloway, Lee's wife, was closer to decedent than perhaps even his wife. Mary Nell spoke with decedent at length on numerous occasions and typed his last will. From talking with decedent, Mary Nell stated she understood that Dewey Holloway wanted his children to keep the money in the certificates until his wife's death and then divide it. Mary Nell Holloway stated in pertinent part that
Well, within the talking I understand that if Mattie needed anything, needed anything in their judgment, that it was to be taken care of, her needs. If it was needed in their judgment. Otherwise, it was to be kept for his children. Now this is the way it, I understood it was set out.
* * * * * *
I said that the money was to be kept for his children after Mattie's death unless, if in their opinion that that money was needed for her welfare... . It was not to be divided until after her death, in case it was needed. But now in their judgment, they were the ones who were to decide. Or Betty. Whoever was in charge of it, and she was in charge of it.
Betty Holloway Hawkins acknowledged that decedent wanted Mattie to be taken *1222 care of, but she said it was only if  in Betty's judgment and at her discretion  Mattie really needed something.
The two certificates renewed in September 1982 were in a separate envelope in Lee Holloway's lock box at decedent's death.
The certificates do not contain words of survivorship and at top is the notation "Not Transferrable except on the books of Bank of Mississippi." Neither party introduced copies of signature cards on file with the bank for the certificates.
Our cases involving joint tenancy survivorship of an interest in commercial paper have not made clear the interaction between our version of the Uniform Commercial Code and our descent and distribution laws.
In Rand v. Moore, 414 So.2d 885 (Miss. 1981), we held that a certificate of deposit in decedent's name, endorsed over and physically delivered to a third party, completed a gift of the certificate. Even though the instrument lacked the "magic words" of payable to "order" or "bearer," the certificate could nonetheless be transferred under Miss. Code Ann. § 75-3-805. The transfer created a presumption of a valid and intentional delivery which, in the absence of contrary proof, established a gift inter vivos. Id. at 887. In the same case we held that another certificate with the inscription "P.O.D.," for "Payable on Death," was not effective to pass an interest at death to the named person when the certificate lacked execution as a valid will.
In Thomas v. Estate of Eubanks, 358 So.2d 709 (Miss. 1978), we held that a negotiable certificate of deposit in decedent's possession at his death made payable in the alternative was part of decedent's estate. The decedent was a holder in due course of a negotiable instrument and there was no language or signature card evidencing survivorship. This Court went on to note that there was no evidence indicating a valid gift of the certificate to the alternative payee.
Rather than relying on the presumption of survivorship implied with joint bank accounts, See Miss. Code Ann. § 81-5-63 (Supp. 1987), the Court in Thomas relied on Miss. Code Ann. § 75-3-116 (1972) which provides that the holder of an instrument payable in the alternative may enforce, negotiate or discharge it. The decedent having possession was entitled to act as though the instrument were hers alone, and her possession at death made it part of her estate.
We moved back away from the Commercial Code in In re Estate of Isaacson v. Isaacson, 508 So.2d 1131 (Miss. 1987). The certificates in question in Isaacson were neither negotiable instruments nor non-negotiable instruments subject to our Uniform Commercial Code (UCC). They fell within a third category of instruments not governed by the UCC. We held those instruments passed by survivorship because the joint owners expressly evidenced this intent. We added that "the `negotiability' of the CD is of no consequence" if survivorship is expressly stated.
The chancellor in this case relied on the statutory presumption. However, we have never squarely addressed whether the presumption of Miss. Code Ann. § 81-5-63 (Supp. 1987) should apply to certificates of deposit. We decided only two cases prior to the UCC involving survivorship rights in a certificate of deposit. Shearin v. Coleman, 201 Miss. 193, 28 So.2d 841 (1947); Myers v. Laird, 230 Miss. 675, 93 So.2d 828 (1957). In neither did we apply the presumption. In Shearin the certificate indicated it was payable to order in the alternative, "or survivor." In Myers, there was constructive delivery of the certificate to the alternative payee by delivering the key to the lock box which contained the certificate.
In Isaacson we characterized Thomas's holding as standing for the proposition "that in absence of any survivorship provision, a joint tenancy will not be presumed, and, as a result, the CD will pass to the estate." Isaacson, 508 So.2d at 1134. Therefore, we now hold that the statutory presumption of Miss. Code Ann. § 81-5-63 does not apply to certificates of deposit. Absent expressed survivorship provisions, however, Thomas and Rand v. Moore, *1223 make clear this Court has continued to apply gift analysis. Thus, it appears from the above-cited cases that where the certificate payable in the alternative bears facial or contractual indication of intended survivorship, this expressed intent will be given effect. Absent express indication, this Court will look to whether the co-owner made a valid gift of his interest. See Thomas v. Estate of Eubanks, 358 So.2d at 713; Rand v. Moore, 414 So.2d at 886-87. Of course, this will be true without regard to the extent of a co-owner's interest. Thus, even a tenant in common with a one-half interest in a certificate of deposit will be required to prove his co-tenant made a valid gift absent express language indicating survivorship. We realize in a given instance it may be difficult for one co-tenant to prove his co-tenant relinquished control and dominion, but we do not subscribe to that which facilitates circumvention of our descent and distribution law. This result will reinforce the need for expressing survivorship, if this is the desired result.
Turning to the case at hand, the certificates in question bear no survivorship language. No signature cards were produced contractually establishing survivorship rights. Thus, the question is whether Dewey Holloway completed a gift of his assets.
The requirements of an inter vivos gift are well settled and familiar. When it is shown that one party has title to certain property and another party claims that property by virtue of a gift from the owner, the following elements must be present: (1) a donor competent to make a gift, (2) a voluntary act of the donor with donative intent, (3) the gift must be complete with nothing else to be done, (4) there must be delivery to the donee, and (5) the gift must be irrevocable. See, e.g., Ross v. Braswell, 511 So.2d 492 (Miss. 1987). See also, Carter v. State Mutual Federal Savings & Loan Association, 498 So.2d 324, 327 (Miss. 1986); Matter of Collier, 381 So.2d 1338, 1340 (Miss. 1980); Thomas v. Estate of Eubanks, 358 So.2d 709 (Miss. 1978); Longtin v. Witcher, 352 So.2d 808 (Miss. 1977).
The burden of proof on each element lies with those seeking to establish the gift. Ross, at 496. The evidence must be clear and convincing, or "clear and satisfactory." Ross, at 496; Carter, 498 So.2d at 327. Keeping this burden in mind, we are constrained to hold as a matter of law that the facts in this case fail to establish irrevocable delivery to appellees.
Delivery requires relinquishment of all dominion and control. Carter, 498 So.2d at 327; Gilder v. First National Bank of Greenville, 214 So.2d 681 (Miss. 1968). Here there was conflicting evidence as to who originally purchased the certificate in 1976. Mary Nell Holloway, decedent's daughter-in-law/confidant and Lee's wife, testified that she originally received a pouch containing decedent's belongings, which she was told also contained a certificate of deposit. This pouch was placed in Lee's lock box and kept separate from their belongings. Betty Holloway Hawkins stated that she purchased the original certificate of deposit with money that her father gave her, and possibly some money of her own. Early certificates were originally taken out in Betty's, Lee's and Guy Holloway's names only. Following several renewals, Betty testified that she added her father's name to the certificate so he would receive the interest income. This arrangement continued until decedent's death. Betty testified that she continued to renew the certificate and periodically increased the amount. The last time the amount was increased, a $16,000 certificate was increased to two $10,000 certificates on March 20, 1982.
Lee testified that he would give decedent anything from the lock box with decedent's name on it at his request, except the certificates, because Betty was taking care of those. However, it was stipulated Guy Holloway would testify that decedent was given the certificate or certificates on one occasion.
The proof shows that though Betty Hawkins may have purchased the initial certificate, decedent contributed the majority, if *1224 not all the money for that purchase. The initial certificate and subsequent renewals were kept in the "community lock box" to which decedent had access. Decedent continued to receive the income from these CDs during his lifetime. This itself is normally not conclusive of a failure to make a gift, but taken together with evidence that decedent continued to have some control over the certificates, the proof fails as a matter of law to show by clear and convincing evidence that decedent Dewey Holloway relinquished control of his interest in the certificates.
Decedent's interest in the certificates not having been the subject of a valid gift, it should be returned to the estate. On remand, the chancellor should direct that the amount of the certificates attributable to decedent's contribution must be brought into the estate.

III.
Unlike the case with the CD's, the chancellor found that the $20,200 note secured by a deed of trust, made payable alternatively to Dewey Holloway or Lee Holloway, was constructively or symbolically delivered by decedent to Lee Holloway and passed to him as a surviving joint tenant.
As noted in Section I, above, Dewey Holloway owned and conveyed property in March 1976 to other individuals for a $20,200 note, payable in monthly installments for 15 years. Dewey Holloway placed Lee's name on the note as an alternative payee, and gave the note to his son for safekeeping. Lee had the note in his lock box at his father's death. The note appears to meet all the requirements of Miss. Code Ann. § 75-3-104 (1972) as a negotiable instrument. It is a promise to pay "Dewey D. Holloway or Lee T. Holloway or order" a sum certain at a time specified by a payment schedule written on the back, and signed by the makers.
The chancellor in his opinion found the note was a negotiable instrument delivered by Dewey Holloway to his son, who took as a surviving joint tenant. The chancellor relied exclusively on Lee Holloway's affidavit, filed in support of his motion for summary judgment, in finding delivery. In that affidavit, Lee stated that his father had no control over the note or its proceeds. This determination must fall as against the overwhelming weight of the evidence, however.
Lee Holloway stated the note was among several items, including a will, which his father requested be stored in a separate container in his lock box. The chancellor stated that Lee's deposition shed no light on this issue. To the contrary, Holloway's testimony was that he kept the note for his father's convenience. In pertinent part Lee Holloway stated:
Q. Okay. Did you have anything else that, you know, had his name on it or belonged to him in that box?
A. Yeah, I had the deed to the house and insurance policy that he had on the house that he'd asked me to put up for safekeeping. Other than that, I didn't have anything else. Well, I did to. I had a deed of trust that had his name and mine on a piece of property he's sold back in 1976.
Q. All of that was in the box at the time 
A.  yes, in the box with my personal papers.
Q. So basically he was just using or you were allowing him to use this box for his possessions too?
A. Well, he just asked me to take them and keep them in my box, that's all.
Q. So basically would it be fair to summarize that he would utilize your box by calling you and you'd place something in there and if he needed it back, you'd give it back to him, and in essence you were letting him use that box, is that a fair summary?
A. Well, if he asked me to put something in there and I, and then asked me for it out, I'd go get it for him, but as far as, if that's, that's all I can tell you.
Q. And if he asked for it back, you'd get it out.
A. Yeah, if he asked for it, I'd go get it.

*1225 Q. You never refused him access to anything that went in there that had his name on it?
A. No, sir.
True, Lee T.'s deposition is silent on who received the note proceeds. However, his testimony contradicts his affidavit stating his father had no control over the lock box; instead, it reveals that he was merely holding the note for his father's convenience. The parties stipulated that the note's makers would testify that they only dealt with decedent.
There is no dispute that Dewey Holloway owned the property and he put his son's name on the note. In the absence of clear and satisfactory evidence that Lee T. Holloway held the note as anything more than a convenience, we must overturn the chancellor's finding of delivery as manifestly wrong.
As noted above, the proof that Lee T. Holloway held the note as a convenience rebuts any evidence that decedent made a valid gift.

IV.

Did the Lower Court Err in Finding "Apparent Delivery" of the Promissory Note?

V.

Did the Lower Court Err in Overruling Appellant's Objection to Executor's Inventory?
These assigned errors raise no new points and are merged into our previous discussion.

VI.

Did the Lower Court Err in Refusing to Remove the Executor in Favor of a Disinterested Executor De Bonis Non?

There can be no question that Lee T. Holloway, who claimed to take the $20,200 note free of the estate, had a conflict of interest with the estate which necessitated his resignation as executor. Matter of Chambers, 458 So.2d 691, 693 (Miss. 1984); Ratliff v. Ratliff, 395 So.2d 956 (Miss. 1981). The failure of the chancellor to appoint a new executor upon request was error. We trust this will be done on remand.

VII.

Did the Trial Court Err in Failing to Assess Costs?
With the disposition being made today, we trust this issue will be re-evaluated and an appropriate ruling entered.

VIII.

Did the Lower Court Err in Failing to Provide a Widow's Allowance?
Mattie Holloway is entitled to one year of support by statute. Miss. Code Ann. § 91-7-135 (1972). Upon remand the court should order compliance with this provision.
In summary, we hold that neither the two $10,000 certificates of deposit, nor the $20,200 note secured by a deed of trust passed outside Dewey Holloway's estate. We remand to the Chancery Court of Lee County for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
HAWKINS, P.J., not participating.