607 So.2d 1141 (1992)
ESTATE OF Susie Mae STAMPER, Deceased.
Marshall Bernard Stamper, Jr.
v.
Nellie Jo EDWARDS, Administratrix, Francis Williams, Marcus Williams, and Bob Williams.
No. 89-CA-0874.
Supreme Court of Mississippi.
August 19, 1992.
*1142 Robert M. Logan, Gerald & Brand, Newton, for appellant.
John K. Keyes, Keyes & Rogers, Collins, H.D. Granberry, III, Steen Reynolds Dalehite & Currie, Jackson, for appellees.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
We have before us another family fight over money, the testator's son claiming against his stepmother's estate and, by virtue of his father's will, demanding her financial remains. The will did so provide, in the form of a contingent remainder, but the Court below held the property at issue did not pass under the will. We affirm.
On cross-appeal, the stepmother's administratrix demands two certificates of deposit payable jointly to the stepmother and another, but without express survivorship rights, and, as well, a third certificate payable on death to another. Administratrix objects further to the Chancery Court's enforcement of a Totten Trust the stepmother created and funded with a fourth certificate of deposit for her stepson's benefit. Again, we affirm.

II.

A.
Marshall Steven Stamper, ("Marshall")[1] late of Newton County, Mississippi, died testate on September 19, 1975, at the age of seventy-nine. Marshall left surviving him a widow, Susie Mae Stamper ("Susie Mae"), and a son by a prior marriage, Marshall Bernard Stamper ("Bernard"). Marshall left a will, made some four and a half years earlier, providing, in relevant part:
I will devise and bequeath unto my wife, Susie [Mae] Stamper, all of my property wherever found at my death and to include all personal, real and mixed property... . However, if any property remains at my wife wife's (sic) death, then I will and bequeath the remainder of the property left at her death to my son, Bernard Stamper.
*1143 Susie Mae Stamper presented the will to the Chancery Court of Newton County for probate in common form, and that Court appointed her as Executrix and issued letters testamentary. In due course, Susie Mae, as Executrix, filed her First and Final Accounting and Petition to Close the Estate. Therein Executrix described numerous assets she had found and identified particularly "certain jointly owned savings certificates and investments," to-wit:
First National Bank, Newton, Mississippi, savings account value  $10,521.61
Newton County Bank, Newton, Mississippi; savings account value  $110,348.70
Peoples Bank of Mississippi, N.A., Decatur, Mississippi, checking account value  $2,584.15
Bankers Trust Savings and Loan Association, savings account No. 697-532, value  $4,580.10
Bankers Trust Savings and Loan Association, savings account No. 631-329 value  $12,705.74.
It appears Susie Mae had with her own funds purchased the certificate representing the largest of these accounts  the $110,348.70 savings account with the Newton County Bank  and had placed it in the joint names of Susie Mae Stamper and Marshall Steven Stamper, though no express survivorship clause appears, to all of which we will return.
The handling of Marshall's estate appears to have bordered on the routine, and, on November 10, 1976, the Chancery Court entered its Final Decree Approving the First and Final Accounting and Closing the Estate. Below we revisit the exact wording of this decree. The point for the moment is that in November, 1976, Susie Mae Stamper took all, for Marshall's will left his entire estate to her, with full right and power to consume or dispose of all property she received thereunder. One of today's claims derives from the contingent remainder clause, that is, the language of the will which provides indubitably, if, at her death, Susie Mae Stamper had left any of the property she received under her late husband's will, or the proceeds or the increase thereof, that property passed to his son, Bernard.

B.
In October of 1975, shortly after Marshall's death, Susie Mae had taken the money and placed it in a series of certificates of deposit made out to herself and different co-holders or payable-on-death beneficiaries. Life proceeded apace and without event for several years after the closing of his estate in 1976. Susie Mae moved to Covington County. In time Susie Mae began to fail and was found to suffer Alzheimer's disease. On April 9, 1982, the Chancery Court of Covington County gathered Susie Mae's affairs into a conservatorship and appointed Nellie Jo Edwards, Susie Mae's niece, conservator of her aunt's person and estate. Conservator Edwards soon thereafter found it necessary to place Susie Mae in a nursing home in Hattiesburg where she remained until her death on December 16, 1985.
Susie Mae Stamper died intestate. Her conservator/niece, Nellie Jo Edwards, approached the Chancery Court of Covington County about the matter and was appointed Administratrix. The present appeal arises from this administration. It seems the conservatorship estate which was then closed out held at least six certificates of deposit. These CDs were renewals of the CDs Susie Mae had procured in October of 1975 and later renewed, as well as two others procured in 1981. The CDs aggregated some $142,546.04, and as before were made payable to Susie Mae Stamper and various co-holders or payable-on-death beneficiaries. All agree that the funds represented by these CDs constitute the remainder of the funds listed in Executrix Susie Mae Stamper's final accounting back in 1976, the principal of which is the $110,000.00-plus savings account at the Newton County Bank.
Only four certificates of deposit represent funds in issue. These are:
(1) Certificate No. 1004264 issued by the Newton County Bank, Newton, MS in the principal sum of $40,000.00 payable to "Herself or Mr. Francis Williams."

*1144 (2) Certificate No. 1004265 issued by the Newton County Bank, Newton, MS in the principal sum of $30,000.00 payable to "Herself or Marcus Williams."
(3) Certificate No. 1004266 issued by the Newton County Bank, Newton, MS in the principal sum of $40,000.00 payable to "Mrs. Susie Mae Stamper, Trustee for Bernard Marshall Stamper" (sic).
(4) Certificate No. 003-50023414 issued by Magnolia Federal Bank, Collins, MS in the principal sum of $10,000.00 payable to "Susie M. Stamper, Payable on Death to Bob Williams."
Bernard Stamper appeared in the matter of his stepmother's estate and invoked his father's will and claimed the funds represented by these certificates. Administratrix Edwards resisted, saying all such funds were the property of Susie Mae Stamper and should pass to her heirs at law. Francis Williams, Marcus Williams and Bob Williams appeared and each claimed the funds represented by the CD of which he or she was a co-holder or payee.
The matter went to trial where the parties first sought the proper reading of the proceedings had before the Chancery Court of Newton County back in 1976. No one questioned that Susie Mae Stamper emerged from those proceedings owning all funds reflected in the several joint accounts with unfettered power of consumption or alienation during her lifetime. The bone of contention was whether those funds had in fact and in law been a part of the estate of Marshall Steven Stamper, so that at Susie Mae's death their proceeds remaining in her hands might be controlled by Marshall's will.
In reviewing these 1976 proceedings, the Chancery Court of Covington County rejected Bernard's claim and held that the only property Marshall Steven Stamper held at his death, and which became a part of his estate and passed under his will, was
the Mississippi Chemical Corporation stock (25 shares), miscellaneous household furniture and personal property, and one 1970 Buick LeSabre automobile.
Because the jointly held accounts had never become a part of his father's estate, the contingent remainder clause in his father's will gave Bernard no rights in their proceeds remaining at his stepmother's death.
The Chancery Court then proceeded to the contest between Susie Mae's administratrix and the co-holder/payees on the renewal certificates of deposit, the originals of two of which Susie Mae Stamper had procured in October of 1975. The Court held, in relevant part:
(2) Certificate No. 1004266 issued by the Newton County Bank ... in the ... sum of $40,000.00 payable to "Mrs. Susie Mae Stamper, Trustee for Bernard Marshall Stamper", (sic) constitutes no part of the estate of Susie Mae Stamper for the reason that said certificate constitutes a Totten Trust, and not having been revoked during the lifetime of Susie Mae Stamper, the funds represented by said certificate is (sic) now the property of Bernard Marshall Stamper (sic).
(4) Certificate No. 1004264 issued by the Newton County Bank ... in the principal sum of $40,000.00 payable to "Herself or Mr. Francis Williams", does not constitute a portion of the estate of Susie Mae Stamper deceased for the reason that pursuant to Miss. Code Ann., § 81-5-63 (Supp. 1988), upon her death the funds represented by said certificate became vested in Mr. Francis Williams.
(5) Certificate No. 1004265 issued by the Newton County Bank ... in the principal sum of $30,000.00 payable to "Herself or Marcus Williams", does not constitute a portion of the estate of Susie Mae Stamper deceased for the reason that pursuant to Miss. Code Ann., § 81-5-63 (Supp. 1988), upon her death the funds represented by said certificate became vested in Marcus Williams.
(6) Certificate No. 003-50023414 issued by Magnolia Federal Bank ... in the principal sum of $10,000.00 payable to "Susie M. Stamper, Payable on Death to Bob Williams", became vested in Bob Williams upon the death of Susie Mae Stamper pursuant to Miss. Code Ann., § 81-5-63 (Supp. 1988).

*1145 III.
Bernard wants it all, now. He challenges the Chancery Court's holding that the contingent remainder clause in his father's will did not operate on the proceeds of the jointly held accounts listed in Part II(A) above. He urges upon us that the Chancery Court's principal error was that it allowed Susie Mae's administratrix to attack collaterally the 1976 decree closing Marshall's estate. We do not see it so at all, for what  and all  the Court did was construe and interpret the 1976 proceedings in light of the questions Bernard had raised.
A judgment decree or opinion of court is a legal text, and, when questions of meaning arise, answers are sought by "the same rules of construction which appertain to other legal documents." Gillum v. Gillum, 230 Miss. 246, 255 92 So.2d 665, 668 (1957), quoting Rayl v. Thurman, 156 Miss. 8, 15, 125 So. 912, 914 (1930); see also, Webster v. Webster, 566 So.2d 214, 215 (Miss. 1990); Bowe v. Bowe, 557 So.2d 793, 795 (Miss. 1990). Courts must give the prior decree the most coherent and principled reading its words will bear. See Simmons v. Bank of Mississippi, 593 So.2d 40, 43 (Miss. 1992). Of course, the record of proceedings before the court are the principal part of the objective accessible world the construing court may consult en route to construction. Wray v. Wray, 394 So.2d 1341, 1343-44 (Miss. 1981); Gillum v. Gillum, 230 Miss. at 255, 92 So.2d at 669.
It must be conceded the 1976 decree is not as clear as we might have preferred. No contest ensued at the time, nor does it appear anyone anticipated the present contest. That a document is difficult, so that one must read it four times to see what it says, should not impede enforcement. Upon reflection, we find the decree supportive of the reading the Chancery Court of Covington County gave it.
The 1976 decree finds certain properties to be held by Marshall Stamper at his death and goes on to find that "in addition thereto, the decedent owned jointly with his wife, Susie M. Stamper, ... . certain jointly owned savings certificates and investments" itemized above. What is important is that by its language the decree never mixes the jointly held savings certificates with the property of which "decedent died seized and possessed." The decree later provides that:
All property, real, personal and mixed, held in the estate of Marshall Stamper, deceased, should be finally distributed to Mrs. Susie M. Stamper, ....,
but the decree never says that this includes the jointly held accounts. The Court acts upon this finding and authorizes executrix to deliver all property in the estate to Susie M. Stamper, again not saying precisely what that property is.
The decree's most troublesome clause is:
All property of decedent, including bank accounts, savings accounts, and other personal property, as more particularly described in this decree, is hereby declared to be vested in the said Mrs. Susie M. Stamper in fee simple, subject to the right of the residuary beneficiary, Bernard Stamper, to take any such property remaining upon the death of said Mrs. Susie M. Stamper, if any such property remains at her death, as provided by the last will and testament of the deceased.
The will was not the sole source of the rights of Susie M. Stamper, as we have noted. Remember this and read the beginning words: "All property of decedent, ... ." Nothing in the decree theretofore includes the jointly held accounts within the phrase "all property of decedent." Second, nothing said here precludes the fact that Susie Mae Stamper may have taken this property by virtue of a will substitute or, in the case of the $110,000.00 deposit, by virtue of the fact that the money was hers to start with and that she had executed no instrument which vested any interest in it in her husband. Finally, the language limits Bernard's rights as "residuary beneficiary" to those "provided by the last will and testament of the decedent." This can only mean that Bernard's rights are limited to those properties upon which the will exerted legal force, which does not include and has never included the jointly held accounts.
*1146 The Court below held the funds at issue never came into the estate and, if this is so, the Court's holding is certainly consistent with the November, 1976, decree which limits Bernard's rights to those arising under the will. If Susie's rights derive from some source extraneous to the will, by definition Bernard has no rights in the remainder thereof.
Bernard makes much of the fact that the savings accounts were disclosed to the Chancery Court of Newton County, and were described fully in the first and final accounting and in the decree closing the estate. Perhaps in a technical sense, this was all unnecessary, but in this day when wills have long since ceased to be the sole or even the principal means by which persons pass their property to others before or at death,[2] it is only mete and proper that these matters be considered together. That these funds may have been reported on the estate tax return as assets of the estate of Marshall S. Stamper is similarly without effect.[3] The fact that Susie Mae Stamper as executrix paid estate taxes on assets she did not have to pay taxes on may have been folly, but it has no legal effect today.
Bernard's claims notwithstanding, the evidence extrinsic to the text of the decree supports the view that these funds were never a part of Marshall's estate and, hence, not subject to his will. Parol or extrinsic evidence, of course, may not impeach or otherwise embarrass a decree, or add substantive provisions not fairly implied therein, see Cooper v. Crabb, 587 So.2d 236, 241-42 (Miss. 1991), but such evidence is quite available to explain and aid in the reading of the decree, and the Court would be derelict if it did not resort thereto.
Turning to the principal source of the funds here contested, the $110,000.00 deposit with the Newton County Bank, we find two independent sources supporting the present decree that these funds belonged to Susie M. Stamper outright exclusive of her husband's will. First, the Newton County Chancery Court credited her claim that she and her late husband held the certificate reflecting the account as joint tenants with right of survivorship. Our law well recognizes and enforces joint tenancies with right of survivorship as will substitutes and has only recently enforced this view with respect to deposits of funds with a financial institution, notwithstanding a contrary disposition by will. In re Will and Estate of Strange, 548 So.2d 1323, 1326 (Miss. 1989); Cooper v. Crabb, 587 So.2d at 242; see also, Weems, Wills and Administration of Estates in Mississippi § 2.13 (Supp. 1990).
Second, in the case of the largest of the 1975 accounts  the $110,348.70 savings account with the Newton County Bank  the only evidence before us reflects that this money always belonged to Susie Mae Stamper. In the record we find a certificate of deposit with the Newton County Bank dated August 1, 1973, which recites that "Mrs. Susie Mae Stamper has deposited in this bank $110,000.00 payable to herself or Mr. Marshall Stamper, Route 1, Decatur, Miss." It is true we presume rebuttably that joint deposits in the name of a husband and wife are held by both, Reeves v. Reeves, 410 So.2d 1300, 1303 (Miss. 1982), but we accept as well that, in the absence of enforceable contractual, donative or testamentary terms to the contrary, proof of the source of the funds may overcome this presumption. Regan v. Regan, 507 So.2d 54, 56 (Miss. 1987). There is no gift talk on this deposit or any other writing covering it. In the absence of language creating survivorship rights or evidencing a gift inter vivos or independent proof that the owner of the funds conveyed an interest therein to the other, such funds remain the property of the owner at the other's death. See, e.g., Matter of Estate *1147 of Holloway, 515 So.2d 1217, 1222 (Miss. 1987); Matter of Collier, 381 So.2d 1338, 1340 (Miss. 1980). Any rights Marshall had in these funds expired at his death.
The Chancery Court correctly held the funds represented by the certificates of deposit disputed today never became a part of Marshall's estate and, therefore, are not in the form of their proceeds, increase and remainder subject to the terms of his will. Bernard acquired no rights therein by virtue of his father's will.

IV.
Susie Mae Stamper emerged from the proceedings regarding her late husband's estate owning outright the funds reflected in the accounts mentioned above. She enjoyed full power of consumption, alienation, or disposition. This would have been the case if these funds had passed to her under the will, which they did not.
The first question on cross-appeal concerns the funds reflected by the two certificates of deposit issued Susie Mae Stamper, purchased from the Newton County Bank  Nos. 1004264 and 1004265  and payable to herself or Francis and Marcus Williams, respectively. We know that Susie Mae purchased these CDs on October 1, 1975. She renewed each on October 21, 1981, prior to the advent of her Alzheimer's disease and her conservatorship. The first, certificate No. 1004264, was in the principal sum of $40,000.00 payable to "herself or Mr. Francis Williams," and the second, No. 1004265, in the amount of $30,000.00 payable to "herself or Marcus Williams." Neither contained or was covered by any donative terms or survivorship clause. Neither was accompanied by any donative act, symbolic or otherwise. The certificates presently contested are renewals of the original 1981 certificates.
The Chancery Court held that Section 81-5-63,[4] as amended in 1988,[5] controlled and that this statute converted certificates so issued into survivorship certificates so that the funds represented thereby did "not constitute a portion of the estate of Susie Mae Stamper." Following these premises, the Court held that, by reason of the statute *1148 and the certificates, at the death of Susie Mae Stamper, the funds became vested in Francis Williams and Marcus Williams, respectively. On appeal, Administratrix Edwards attacks this decision on grounds the fate of these funds is controlled by the law as it read back in October of 1981, when Stamper last renewed the certificates of deposit. Administratrix Edwards argues that the Chancery Court erred as a matter of law when it gave the new statute a retroactive reading.
The genesis of the 1988 enactment becomes important. In Matter of Estate of Holloway, 515 So.2d 1217 (Miss. 1987), we held certificates of deposit were not "deposits" within the statutory presumption of Miss. Code Ann. § 81-5-63 (1972), as it then read. Holloway went on to hold that, in the absence of express survivorship provisions, the co-payee of a certificate of deposit acquired no rights unless the "donor" satisfied the requisites of a valid and enforceable inter vivos gift. Holloway, 515 So.2d at 1223. Few decisions of this Court have met with so swift a legislative rejection. At its regular 1988 session, the Legislature enacted
An Act ... to Amend Section 81-5-63, ... to Clarify the Meaning of the Term "Deposit" as Used in Such Section, to Clarify Ways in Which a Deposit in the Name of Two or More Persons May be Payable, and to Provide For a Conclusive Presumption of Survivorship.
The Legislature thus amended Section 81-5-63 to overrule Holloway in two respects: to make clear that certificates of deposit were "deposits" within the statute, and to make clear the content of the statute's presumption of survivorship rights and to specify the various shorthand formulas that might call it forth.[6]Miss. Laws, ch. 484, § 3 (1988), effective from and after April 27, 1988. See Weems, Wills and Administration of Estates in Mississippi § 2-56 (Supp. 1990). Still, there is no getting around the square holding of Holloway, nor of the fact that it was controlling law from November 25, 1987, through and including April 27, 1988.
Administratrix Edwards argues strenuously that the 1988 amendments import no retroactive effect, nor could they consistent with the constitution, and marshals Mladinich v. Kohn, 186 So.2d 481, 483 (Miss. 1966), and Klaas v. Continental Southern Lines, 225 Miss. 94, 82 So.2d 705, 707 (1955), in support. Certainly rules imposing new duties or obligations or subjecting persons to liabilities under circumstances not reasonably foreseen ought be prospective only. Still, familiar prohibitions on ex post facto laws[7] do not preclude the Legislature (or this Court) giving retroactive effect to new enabling, power-conferring rules, or rules of procedure or practice, Pruett v. City of Rosedale, 421 So.2d 1046, 1052 (Miss. 1982), or new rules of duty and obligation foreshadowed by what had gone before. Hall v. Hilbun, 466 So.2d 856, 876-77 (Miss. 1985). In 1962 the Legislature enacted the Uniform Act on Paternity, conferring substantive and procedural rights on children born out of wedlock and imposing duties upon their fathers. The duty of fathers to support their illegitimate offspring had long existed, see Welford v. Havard, 127 Miss. 88, 89 So. 812 (1921), and the 1962 Legislature made the rights then modernized and elaborated available to children born before the act. We upheld the statute in the face of an ex post facto charge. Dunn v. Grisham, 250 Miss. 74, 157 So.2d 766 (1963).
Francis and Marcus Williams argue that Section 81-5-63 then and now dealt with the matter of presumptions and was but a rule of evidence. From this, they argue the rule took effect from enactment and applies in all trials thereafter, without regard to whether the operative events subject to litigation arose before enactment. *1149 If we were concerned with a mere rule of evidence, Francis and Marcus would be correct, see Jackson v. State, 551 So.2d 132, 141 (Miss. 1989), but the statute is more than that. It is a facility the law affords our citizens for arranging their affairs. It is a form of legal shorthand, as the word "warrant" in a deed, "f.o.b." in a bill of lading, and, formerly, a contract under seal had certain settled legal consequences whenever used. It is the law saying to citizens, if you do it this way, the courts will give it this effect, see Williams v. Mason, 556 So.2d 1045, 1048-49 (Miss. 1990), and the question is what in that regard the law said to Susie Mae Stamper back in October of 1981?
There is no per se rule that we must answer this question by blinding our vision to what has occurred since. The law as it is is a continuous process of becoming, Collier v. Shell Oil Company, 534 So.2d 1015, 1019 (Miss. 1988), and we have on occasion looked to post-event legislation to clarify the pre-enactment content of the law. See Ryals v. Pigott, 580 So.2d 1140, 1153-54 (Miss. 1990); Owens-Illinois, Inc. v. Edwards, 573 So.2d 704, 706-09 (Miss. 1990); Wansley v. First National Bank of Vicksburg, 566 So.2d 1218 (Miss. 1990); State ex rel. Pittman v. Ladner, 512 So.2d 1271, 1277 (Miss. 1987); and Crosby v. Barr, 198 So.2d 571, 574 (Miss. 1967). When we do this, of course, our questions ordinarily are whether we offend any vested right, State ex rel. Moore v. Molpus, 578 So.2d 624, 637 (Miss. 1991); State ex rel. Pittman v. Ladner, 512 So.2d at 1275-76, or disappoint reasonable reliance, Collier v. Shell Oil Company, 534 So.2d at 1018. Today's question is a bit different. We presume Susie Mae Stamper had fair knowledge of the content of the law in 1981, when she last renewed the certificates, and we ask whether enforcement of the law as clarified in 1988 would give what she did in 1981 an effect she had no reason to expect.
We look first at whether in 1981 Susie Mae should reasonably have considered a CD a "deposit." In the Holloway opinion we reviewed many of our prior cases but stated, inexplicably,
We have never squarely addressed whether the presumption of Miss. Code Ann. § 81-5-63 (Supp. 1987) should apply to certificates of deposit.
Estate of Holloway, 515 So.2d at 1222. It is true, prior to the Legislature's 1988 clarification, the statute used only the term "deposit." See Miss.Code § 3809 (1930); Miss. Code Ann. § 5205, (1942), and Miss. Code Ann. § 81-5-63 (Supp. 1987). With the benefit of twenty-twenty hindsight, we cannot imagine what led us in Holloway to think that the term "deposit" did not include "certificates of deposit" which, in a very practical sense, are nothing more than time deposits.[8] A re-review of our pre-Holloway cases makes clear that, when Holloway held a "certificate of deposit" was not a "deposit," we changed this narrow corner of the law as it had existed prior to November 25, 1987, and, more important, as it existed before and after October, 1981. Cf. Collier v. Shell Oil Co., 534 So.2d at 1018.
The content of the statute's pre-1988 presumption is a discrete question. Shearin v. Coleman, 201 Miss. 193, 28 So.2d 841 (1947), suggested that a certificate of deposit payable "to A or B" without express survivorship language created a rebuttable presumption of survivorship. We approached the problem from a different angle in In re Lewis' Estate, 194 Miss. 480, 13 So.2d 20 (1943), where the signature card or "contract" with the bank had been lost. Acting in the absence of express survivorship language, and addressing the statute, as it then read, the Court recognized that:
It has the effect of recognizing or sanctioning the practice of accounts being carried in such manner, and such authority so conferred upon the banks is evidently founded on the presumption that the parties intended that the fund should be paid to the survivor. *1150 194 Miss. at 493, 13 So.2d at 25. Still, candor requires concession that our pre-Holloway cases reflect a bit of vacillation from time to time regarding the content and effect of the statutory presumption  is it conclusive or rebuttable? and, if rebuttable, by what? and what quality of writing is needed to create it? See, e.g., Thomas v. Estate of Eubanks, 358 So.2d 709 (Miss. 1978); Myers v. Laird, 230 Miss. 675, 93 So.2d 828 (1957); Shearin v. Coleman, 201 Miss. 193, 28 So.2d 841 (1947); Leverette v. Ainsworth, 199 Miss. 652, 23 So.2d 798 (1946); In re Estate of Lewis, supra; and Stephens v. Stephens, 193 Miss. 98, 8 So.2d 462 (1942). Within that vacillation, however, one thing is clear: we find no ground for the thought the statute as then written excluded "certificates of deposit" from the term "deposit." Nor is there any such basis to be found in the lawyer's, the banker's or the dictioner's parlance.
We think it fair to find the content of the pre-1981 presumption as that traceable to a combined reading of Stephens v. Stephens in 1942, In re Lewis' Estate in 1943, Leverette v. Ainsworth in 1945, and Shearin v. Coleman in 1947. Summarized, absent clearly proved mistake, a (certificate of) deposit covered by a writing expressing joint ownership and right of survivorship would be given effect according to its tenor, parol evidence to the contrary notwithstanding. Beyond this, where the account was payable "to A or B," the fact that there was a writing giving a right of survivorship but which had been lost could be shown by clear proof and given effect. To the present point, an account or deposit payable "to A or B," without more, in law created a right of survivorship. Leverette sums up:
The account must either be in a form such as has been indicated above ["John Doe or Richard Roe"], or in similarity thereto, or else the intention to create a joint ownership account [with right of survivorship] must be well proved aliunde.

Leverette, 199 Miss. at 657-58, 23 So.2d at 799.
From Leverette forward, we find no retreat from the view that a deposit in the name of "John Doe or Richard Roe," without more, or an account payable "to A or B," without more, created a right of survivorship.
In Shearin v. Coleman the Court had before it a checking account with a balance of $327.89 in the name of "Mr. or Mrs. J.H. Barrow" without survivorship language. The court held, with respect to this account, that, by virtue of the statute, "A presumption arises that ... [the deposit] created joint ownership with right of survivorship." 201 Miss. at 196, 28 So.2d at 841. Myers v. Laird, 230 Miss. 675, 93 So.2d 828 (1957), concerned a certificate of deposit payable to "Fannie B. Regan or Ellis Brumfield," without express right of survivorship or other equivalent language. The Court held that upon the death of Myers, "this deposit became the property of Ellis Brumfield and was no portion of her estate," citing the statute. Myers, 230 Miss. at 682, 93 So.2d at 831. Thomas v. Estate of Eubanks, 358 So.2d 709 (Miss. 1978), recognizes the Shearin and Myers decisions without criticism. At issue in Eubanks was a negotiable certificate of deposit which bore no survivorship language, and it is clear from the Court's opinion it denied the statutory presumption, not because of the absence of survivorship language, but because the CD was a negotiable instrument held by the deceased at the time of her death, and the relevant provisions of Article 3 of the Uniform Commercial Code made her and subsequently her estate the holder and owner thereof.
All things considered, we may only conclude an informed person in 1981 procuring or renewing a certificate of deposit payable to herself or another, without more, would reasonably believe that she had thereby created a right of survivorship in the other person. Given what has happened in the law since 1981, no rational reason appears why we should disappoint this expectation. The Court below correctly held the funds represented by certificate No. 1004764 became vested in Francis Williams at Susie Mae Stamper's death. Similarly, the Court correctly held the funds represented by certificate No. 1004265 became the property *1151 of Marcus Williams at Susie Mae's death.

V.
Also at issue are the funds represented by a certificate of deposit, No. 003-50023414, issued by Magnolia Federal Bank on February 4, 1981, in the principal sum of $10,000.00, to "Susie M. Stamper, Payable on Death to Bob Williams." The Chancery Court held these funds constituted no part of the estate of Susie Mae Stamper but rather, by reason of amended Section 81-5-63, these funds "became vested in Bob Williams upon the death of Susie Mae Stamper."
Here again we see a certificate of deposit Susie Mae Stamper purchased during her lifetime, and again we look to the law as it read at that time. Most prominent then was Matter of Collier, 381 So.2d 1338 (Miss. 1980), which had been decided but the year before. Matter of Collier, in relevant part, concerned the disposition of a certificate "P.O.D. to Wilma Franklin." An officer of the bank which issued the certificate "testified that the abbreviation P.O.D. on the certificate meant Payable On Death." 381 So.2d at 1340. The Court held that these were words "testamentary in character" and that they "constitute[d] an attempt to make a negotiable instrument a will," and, as such, could become effective only upon compliance with the formalities of the Statute of Wills. Miss. Code Ann. § 91-5-1 (1972); Matter of Collier, 381 So.2d at 1342. The Court held further that these words had not vested in Wilma Franklin any present interest in the certificate at the time it had been procured and that the words were ineffective to devise any interest to Wilma Franklin payable at the maker's death.
Some ten months after Susie Mae Stamper procured the Bob Williams CD  and some four months prior to the advent of her conservatorship  this Court decided Rand v. Moore, 414 So.2d 885 (Miss. 1981), and with like effect. Citing Matter of Collier, we held that a certificate "P.O.D. [Payable On Death] Pinky Rand  Ethel Mae Battle" was an attempt at a testamentary disposition and as such was ineffective because it did not conform to the formalities of our Statute of Wills. Rand, 414 So.2d at 886. In Matter of Estate of Holloway, 515 So.2d at 1222, we reiterated this view.
During this period, but after 1981, the Legislature moved. Effective April 10, 1984, the Legislature enacted that, with respect to such an account:
The right of the named beneficiary or beneficiaries to be vested with sole and indefeasible title to the monies to the credit of the account on the death of the person or persons opening such an account shall not be denied, abridged or in any way affected because such right has not been created by a writing executed in accordance with the law of this state prescribing the requirements to effect a valid testamentary disposition of property.
Miss. Laws, ch. 326, § 2(i) (1984). Along with Section 81-5-63, this enactment was amended in 1988 in the wake of our Holloway decision to make clear what should have been clear: that the statute applied to certificates of deposit. Miss. Laws, ch. 484, § 2(a) (1988).[9] The question becomes, what effect we should give the Legislature's 1984 enactment that a certificate, payable as the Bob Williams CD is payable, created enforceable survivorship rights, notwithstanding a failure to comply with the Statute of Wills. We find Susie Mae Stamper using language: "Payable on death," which by its common and ordinary meaning would signify her desire that at her death the funds represented by the certificate be paid to Bob Williams. It is true in February, 1981, the form she chose was not effective legally. If we impute to her a knowledge of the law as it then read, we may even say she had no reason to think the language she chose might be effective *1152 according to its tenor. See Part IV above. On the other hand, it is difficult to imagine Susie Mae reasonably selecting the form she did choose with any thought other than that Bob Williams should receive the funds at her death. There is nothing before us importing any notion of trick or chicanery or that she somehow desired to mislead Bob Williams or anyone else.
In April, 1984, when the Legislature acted, Susie Mae's words still had no (then) present effect but for the more basic reason that she had not yet died. Bob Williams' rights were in all respects inchoate and would remain so as long as Susie Mae lived. The question thus is not one of whether we give retroactive effect to the subsequent legislation. The 1984 statute applies to instruments then existing or thereafter made, so long as the maker remains alive.
Because she used the Payable on Death language, nothing suggests we thwart any purpose or intent Susie Mae Stamper may reasonably have had back in February of 1981. Her conservator (with court approval) had some twenty months within which to change the CD but did not. There can be no question that the 1984 enactment renders a "Payable On Death" certificate an enforceable will substitute.[10] The purpose and intent behind the language on the Bob Williams CD is reasonably apparent, and formality is all that may stand between the latter CD and our giving it full effect. The 1988 legislation removes any doubt that this rule includes certificates of deposit, although the point is of no consequence here because prior to 1984, as noted in Part IV, we divine with hindsight no reason for doubting that a certificate of deposit was a deposit, or here, an account.
The Chancery Court correctly held the funds reflected by Certificate No. 003-50023414 "became vested in Bob Williams at the death of Susie Mae Stamper."

VI.
Finally, we come to Certificate of Deposit No. 1004266 issued by the Newton County Bank upon Susie Mae Stamper's October 21, 1981, deposit of $40,000.00. The certificate is payable to "Mrs. Susie Mae Stamper, Trustee for Bernard Marshall Stamper" (sic). The Chancery Court held that the funds represented by this certificate constituted:
no part of the estate of Susie Mae Stamper for the reason that said certificate constitutes a Totten Trust, and not having been revoked during the lifetime of Susie Mae Stamper, the funds represented by said certificate ... [are] now the property of Bernard Marshall Stamper (sic).
Administratrix Edwards challenges this ruling on cross-appeal.
In In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904), the Court of Appeals of New York held that savings accounts established by the decedent in the form "A as trustee for O" did not pass a present interest to the beneficiary. The Court elaborated:
A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocable act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.

Totten, 179 N.Y. at 125-26, 71 N.E. at 752 (emphasis added). The Totten Trust was born.
Restatement (Second) of Trusts § 58.2 (1959) presents the contemporary statement of the rule:
Where a person makes a deposit in a savings account in a bank or other savings *1153 organization in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death if he has not revoked the trust.
The theory of the Totten Trust is that, in the absence of contrary evidence, the inference arising from the form of the deposit is that the depositor intended a trust which becomes irrevocable at death.
We know that in October of 1981, Stamper purchased a $40,000.00 certificate of deposit from the Newton County Bank. We know that she had the certificate made payable to "Mrs. Susie Mae Stamper, Trustee for Bernard Marshall Stamper" (sic). She retained the certificate during her lifetime. There is no evidence that she intended anything other than a trust with Bernard as beneficiary. Her death rendered the trust irrevocable.
By statute, this state has conferred upon its citizens legal power to create and, at death, have them enforced. Totten Trusts, Miss. Code Ann. §§ 81-5-34 and -62 (1972). As before, these statutes had no existence in 1981. We employ the rationale set forth in Part V above and hold the trust enforceable. The Chancery Court correctly held the funds represented by this certificate constituted no part of the estate of Susie Mae Stamper. By reason of the Totten Trust Susie Mae created, and did not revoke during her lifetime, the funds in issue passed to Bernard at her death.
ON DIRECT APPEAL, AFFIRMED; ON CROSS-APPEAL, AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and BANKS, JJ., concur.
McRAE, J., concurs in results only.
NOTES
[1] For convenience and ease of reading, we frequently refer to the elder Stamper as "Marshall," and to his son as "Bernard."
[2] See Restatement (Second) of Property: Donative Transfers § 32.4 and Comments thereto (Tent. Draft No. 12, March 28, 1989) for a listing and brief description of various will substitutes currently recognized and in use around the country.
[3] It appears Executrix Stamper paid a federal estate tax of $1,431.25 and a state inheritance tax of $1,190.91.
[4] In 1981, when Susie Mae first purchased the CDs here disputed, Section 81-5-63 read as follows:

When a deposit has been made or shall hereafter be made in the name of two (2) or more persons, payable to any one (1) of such persons, or payable to any one (1) of such persons or the survivor, or payable to any one (1) of such persons or to any one (1) of the survivors, such deposit or any part thereof or interest or dividends thereon may be paid to any one (1) of the said persons, whether one or more of said persons be living or not, and the receipt of acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. Any bank may pay to the nearest relative of a deceased depositor, without necessity of administration, any sum to the credit of the decedent not exceeding Two Thousand Five Hundred Dollars ($2,500.00). This section shall apply to all banking institutions, including national banks and postal savings banks within the state.
Miss. Laws, ch. 426, § 1 (1980).
[5] In 1988, Section 81-5-63 was amended so that, in its entirety, it read:

When a deposit has been made or shall hereafter be made in the name of two (2) or more persons, payable to any one (1) of such persons, or payable to any one (1) of such persons or the survivor, or payable to any one (1) of such persons or to the survivor or survivors, or payable to the persons as joint tenants, such deposit or any part thereof or interest or dividends thereon may be paid to any one (1) of the said persons, without liability, whether one or more of said persons be living or not, and the receipt of acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. The making of a deposit in such form, or the making of additions thereto, shall create a presumption in any action or proceeding to which either the bank or any survivor is a party of the intention of all the persons named on the deposit to vest title to the deposit and the additions thereto and all interest or dividends thereon in the survivor or survivors. Any bank may pay to the nearest relative of a deceased depositor, without necessity of administration, any sum to the credit of the decedent not exceeding Two Thousand Five Hundred Dollars ($2,500.00). This section shall apply to all banking institutions, including national banks and postal savings banks within the state. The term "deposit" as used in this section shall include, but not be limited to, any form of deposit or account, such as a savings account, checking account, time deposit, demand deposit or certificate of deposit, whether negotiable, nonnegotiable or otherwise.
Miss. Laws, ch. 484, § 3 (1988).
[6] We note and distinguish Delta Fertilizer, Inc. v. Weaver, 547 So.2d 800 (Miss. 1989), which held the joint account of a garnishment debtor and his mother immune from garnishment. There the mother had established and funded the account. There was no writing or other evidence of donative intent. The matter of the statutory presumption, vintage 1988, was neither pressed nor critical to the outcome.
[7] U.S. Const. Art. I, § 10; Miss. Const. Art. 3, § 16 (1890).
[8] Shearin v. Coleman, 201 Miss. 193, 28 So.2d 841 (1947) refers to what we today call certificates of deposit, or CDs, as "certificates of time-deposit." 201 Miss. at 196, 28 So.2d at 841.
[9] The 1988 amendment reads:

The term "accounts" or "account" as used in this section shall include, but not be limited to, any form of deposit or account, such as a savings account, checking account, time deposit, demand deposit, or certificate of deposit, whether negotiable, non-negotiable or otherwise.
Miss. Laws, ch. 484, § 2(a) (1988), as codified as Miss. Code Ann. § 81-5-62(a) (Supp. 1988).
[10] See also, Restatement (Second) of Property Donative Transfers § 32.4, Comment e (Tent. Draft No. 12, March 28, 1989).