BARNES, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 50. I dissent from the majority's determination that Katie could not be classified as an overnight "guest" because she and Chuck purchased their house together. The provision, as read by the majority, is neither "coherent" nor "principled."
 
 See
 

 Estate of Stamper v. Edwards
 
 ,
 
 607 So. 2d 1141
 
 , 1145 (Miss. 1992).
 

 ¶ 51. The majority's emphasis on the term "guest" renders a portion of the remaining provision meaningless. If the person staying overnight is related to the parent "by marriage," he or she most probably would not be a "guest" in the home. Therefore, under the majority's interpretation, the phrase "not related by ... marriage" is superfluous.
 

 ¶ 52. Further, as only "guests" are prohibited under the majority's analysis, Chuck would not have been in contempt of the order had he hired a prostitute to spend the night with the children present. She would, of course, have been an "invitee" rather than a "guest."
 
 [13]
 

 ¶ 53. I submit that the true focus and "principle" of the provision is to prevent the parties from engaging in improper behavior in the presence of the children. The parties agreed to the provision in the temporary order, and the chancery court incorporated the provision into the final order, which was not appealed. The majority has not explained how Katie's status as a co-owner of the house affects the propriety of the situation.
 

 ¶ 54. Chuck freely admitted that he and Katie-members of the "opposite sex not related by blood or marriage"-spent the night together in the children's presence. Additionally, as Allison argues, the "court found Chuck's blatant violation to have had a negative impact on the children as [she] was forced to explain mature issues to the children." When her son informed Allison that Katie was pregnant, Allison testified that she had to explain to him (aged seven at the time of trial and educated in parochial school), "that sometimes people can have a baby when they are not married."
 
 [14]
 
 Confronted by Allison about the morality provision, Chuck responded: "Deal with it.... I'm doing it."
 

 ¶ 55. The chancery court dealt with it, and I would affirm.
 

 GREENLEE, J., JOINS THIS OPINION.
 

 See
 

 Evans v. Hodge
 
 ,
 
 2 So.3d 683
 
 , 686 (¶ 6) (Miss. Ct. App. 2008) ("Social guests are licensees. Business visitors are invitees." (Citations omitted) ).
 

 See
 

 Morrow v. Morrow
 
 ,
 
 591 So.2d 829
 
 , 833 (Miss. 1991) (finding no error in chancery court's modification of divorce decree, restricting the mother's visitation with her child in the presence "of any male to whom she is not married or to whom she is not related," as the court observed that the "seven year old child was unable, with her present lack of maturity and understanding, to evaluate the import of her mother's action[,]" i.e., her " 'illicit' relationship with her male friend while her daughter reside[d] with her").